UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO RIVERA,<br><br>          Plaintiff,<br><br>  v.<br><br>D. URIBE, et al.,<br><br>          Defendants. | Civil No.  10-CV-02245 LAB (BGS)<br><br>**REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>**[Doc. No. 8.]** |

### I.  INTRODUCTION

Ricardo Rivera ("Plaintiff"), a prisoner currently incarcerated at Pelican Bay State Prison, proceeds pro se in this action under 42 U.S.C. § 1983 and California State tort law. Plaintiff filed a Complaint alleging that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him. Plaintiff further alleges that Defendants were negligent in performing their job duties.

On March 7, 2011, Defendants filed an unenumerated 12(b) motion for failure to exhaust administrative remedies, as required by the Prison Litigation Act ("PLRA"), 42 U.S.C. § 1997e(a). (Doc. No. 8.) Plaintiff did not file an opposition. On July 21, 2011, this Court sought supplemental briefing to determine whether Plaintiff qualified for exceptions to the PLRA's exhaustion requirements pursuant to the Ninth Circuit's opinion in *Sapp v. Kimbrell*, 623 F.3d 813 (9th Cir. 2010). (Doc. No. 9.) On August 8, 2011, Defendants filed supplemental briefing in support of their motion to dismiss. (Doc. Nos. 10, 11.) Plaintiff filed a supplemental opposition on August 15, 2011. (Doc. No. 12.)

For the reasons set forth below, the Court recommends Defendants' motion to dismiss Plaintiff's § 1983 actions for failure to exhaust administrative remedies be **GRANTED**. The Court further recommends that Defendants' motion to dismiss Plaintiff's state law negligence claims be **GRANTED** for failure to comply with the California Government Claims Act. Finally, the Court also recommends that Defendant Uribe's motion to dismiss for failure to state a claim be **GRANTED.**

## II.     BACKGROUND

### A. Factual Background

Plaintiff alleges that Defendants James Napolitano ("Napolitano") and Able Zamora ("Zamora") violated his 8th Amendment right to be free from cruel and unusual punishment when they placed him in a cell with a "known enemy" and as a result of the cell placement Plaintiff received multiple injuries. (Doc. No. 1 at 12.) Plaintiff also alleges California negligence claims against Napolitano and Zamora. (*Id.* at 9.) In addition, Plaintiff's complaint names Warden Uribe ("Uribe") as a Defendant, however, Plaintiff does not allege any specific violations attributable to Uribe, nor does the complaint include any facts directly relating to Uribe. (*See generally*, Doc. No. 1.)

Specifically, Plaintiff states that while incarcerated at Pelican Bay State Prison, the Institutional Classification Committee placed him on "single cell" status: a designation requiring that correctional officers determine the compatibility of potential cell-mates. (Doc. No. 1 at 3.) Plaintiff was transferred to Centinela State Prison on August 28, 2009, and housed in administrative segregation. (*Id.*) Plaintiff states that on November 20, 2009, he was housed with inmate Hernandez, a documented "known enemy." (*Id.* at 11-12.) That same day, Plaintiff and Hernandez were involved in an altercation resulting in Plaintiff incurring numerous injuries. (*Id.*) The injuries consisted of swelling to Plaintiff's left eye, a laceration to the forehead, two puncture wounds to the left arm, a slash wound to the left upper high, and multiple injuries to his left hand. (*Id.*) Plaintiff received a Rules Violation Report #FC6-09-11-001, ("RVR") for his involvement in the altercation. (*Id.* at 12.)

### B. Administrative Appeals

Although Plaintiff submitted a number of grievances relating to the fight with inmate Hernandez, none was ever considered on the merits.

///

Plaintiff alleges that on November 24, 2009, he submitted his first CDC 602 Inmate/Parolee Appeal Form 602 ("602 appeal") claiming that Zamora intentionally housed Plaintiff with Hernandez in order to cause a fight between the inmates. (Doc. No. 1 at 12; Doc. No. 12 at 2.)[1] He did not receive a response from prison officials. (*Id*.) On December 3, 2009, Plaintiff filed another 602 appeal and requested that he "be relieved from the charges pending [against him]." (Decl. D. DeGeus ISO Defendants' Mot. to Dismiss Pls.' Compl. ("Decl. DeGeus"); Doc. No. 8-4, Ex. A.) The Appeals Coordinator rejected the appeal on December 8, 2009, stating that an RVR cannot be appealed until after a disciplinary hearing has occurred. (*Id.*, Ex. B.)

On December 7, 2009, Plaintiff requested that his hearing on the rules violation be postponed pending the outcome of referral to the District Attorney for potential prosecution. (Decl. of D. Camargo ISO Defs.' Supplemental Mot. to Dismiss ("Decl. Carmargo ") ¶ 8; *see also* Ex. A.) On January 18, 2010, Plaintiff requested that his postponement be revoked. (*Id*. at ¶ 9; *see also* Ex. B.) On March 30, 2010, Plaintiff received a hearing on the RVR. (*Id*. at ¶ 11; *see also* Ex. A.) Plaintiff pled guilty to the fighting allegation, but contested the charge that a weapon was used. (*Id.*) The final document disposition of Plaintiff's RVR for fighting was reviewed and affirmed by the Chief Disciplinary Officer on May 28, 2010 and the final RVR copy was provided to Plaintiff on May 30, 2010. (*Id.* at ¶ 12; *see also* Ex. A.) Accordingly, May 30, 2010 established the time limit for Plaintiff to file an appeal of the RVR. (*Id.* at ¶ 12.)

On April, 18, 2010, Plaintiff filed an additional 602 appeal. (Doc. No. 1 at 6, 40; Decl. DeGeus at ¶ 6(b), Ex. C.) This appeal requested that the RVR for fighting with a weapon be removed from Plaintiff's central file and also requested for "them to pay for the damages." (*Id.*, Ex. C.) On April 30, 2010, the Appeals Coordinator rejected the appeal as duplicative of Plaintiff's December 8 appeal, and reiterated that Plaintiff could not appeal a disciplinary decision until after the hearing.[2] (*Id.*, Ex. D.)

---

[1] Plaintiff has not provided documentation for a 602 appeal submitted on November 24, 2009. Likewise, Defendants have no record of Plaintiff submitting an appeal on this date. *See* Decl. D. DeGeus ISO Defendants' Mot. to Dismiss Pls.' Compl.; Decl. of D. Camargo ISO Defs.' Supplemental Mot. to Dismiss.

[2] At the time Plaintiff's appeal was screened out on April 30, 2010, the hearing had taken place a month earlier—March 30, 2010—but the decision was not final because the Chief Disciplinary Officer had not reviewed and affirmed the disposition. (Decl. Camargo at ¶ 12.)

1    On April 29, 2010, Plaintiff filed another 602 appeal with Centinela's Appeals Branch, however, this time he did not request removal of the RVR from his central file.[3] (Doc. No. 1 at 34; Decl. DeGeus at ¶ 6(c), Ex. E.) Rather, this appeal requested relief not previously sought in the prior 602 appeals: (1) an investigation of the officers involved; (2) that staff involved be held accountable for their wrongdoing; (3) that he not be retaliated against for filing a grievance; and (4) that he receive reimbursement for the damages incurred. (*Id.*) On May 24, 2010, the Appeals Coordinator once again rejected Plaintiff's appeal, this time citing the basis for the rejection as too great a time lapse between when the action or decision occurred and when the appeal was filed. (Doc. No. 1 at 33; Decl. DeGeus, Ex. F.) The appeal was also rejected because Plaintiff did not include an explanation for why he did not or could not file the appeal in a timely fashion. (*Id.*) The rejection letter invited Plaintiff to continue to pursue his appeal by submitting an explanation and supporting documentation to indicate why he did not or could not comply with the prison appeal procedure. (*Id.*) Plaintiff did not do so.

Plaintiff also submitted the same appeal directly to the Sacramento Inmate Appeals Branch—the Director's level—on May 6, 2010. (Doc. No. 1 at 14, 31; Decl. Foston ISO Defs.' Mot. to Dismiss ("Decl. Foston"); Doc. No. 8-3 at ¶ 9(a).) The appeal was stamped as received on May 13, 2010. (*Id.*) The CDC 602 appeal form requests a full investigation into the housing matter and altercation, that staff be held accountable for placing Plaintiff in a cell with Hernandez, and that he be reimbursed for the damages suffered as a result of the staff's negligence. (*Id.*) Along with the 602 appeal form, Plaintiff submitted a note to the Director of Corrections explaining that he was submitting this 602 because his previous three appeals had not been responded to and he was attempting to exhaust his administrative remedies. (Doc. No. 1 at 29.) On June 8, 2010, the Inmate Appeals Branch sent Plaintiff a letter to inform him that the appeal to the Director's level was screened out and rejected for failing to complete the "Second Level of Review." (Doc. No. 1 at 32; Decl. Foston ¶ 9(a), Ex. A.)

**C. California Government Claim**

On June 24, 2010, Plaintiff submitted a claim to the State of California requesting $10,000 in damages as a result of Napolitano and Zamora wrongfully housing him with Hernandez. (Doc. No. 1 at

---

[3]The exhibits submitted by Plaintiff and along with the declaration from DeGeus indicate that Plaintiff attempted to file this 602 appeal along with a Citizen's Complaint directly to the Office of Internal Affairs. (Doc. No. 1 at 34-38; Decl. DeGeus Ex. E.) The Office of Internal Affairs forwarded the appeal to Centinela's inmate appeals office. (*Id.*)

26-28.) Plaintiff explained that he filed the claim more than six months after the incident because his attempts at resolving the issue through the prison were "thwarted." (*Id*.)

## IV. DEFENDANTS' MOTION TO DISMISS

Defendants Zamora, Napolitano and Uribe bring a non-enumerated motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b). (Doc. No. 8.) In their motion to dismiss, Defendants argue that Plaintiff's failure to exhaust available administrative remedies precludes this lawsuit and therefore, the case must be dismissed. (Doc. No. 8-1, pp. 12-18.) Defendants Zamora and Napolitano also move to Dismiss the state law negligence claims because Plaintiff did not comply with the California Government Claims Act and file his claim within six months of the alleged tortious conduct. (Doc. No. 8 at 14.) In addition, Defendant Uribe filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that the complaint does not contain any factual allegations sufficient to state a cause of action against him and that at a minimum, he is immune from any claim for damages pursuant to the Eleventh Amendment. (Doc. No. 8 at 15.)

### A. Exhaustion Under the Prison Litigation Reform Act ("PLRA")

#### *1. Legal Standard*

The Ninth Circuit has held that failure to exhaust administrative remedies is an affirmative defense, and therefore the burden of raising and proving the absence of exhaustion is on defendants. *See Wyatt*, 315 F.3d at 1119. The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

The proper pretrial motion for establishing non-exhaustion of administrative remedies under 42 U.S.C. § 1997e(a) is a non-enumerated motion under Rule 12(b). *See Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir. 2003). "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1119-20; *see also Ritza v. Int'l Longshoremen's and Warehousemen's Union,* 837 F.2d 365, 369 (9th Cir. 1988) (when deciding an unenumerated 12(b) motion, the court may look beyond the pleadings and consider facts outside the record). If the court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *Id.*

Administrative law gives the government agency "a fair and full opportunity" to adjudicate prisoners' claims. This is achieved by requiring proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis in original) (citation omitted). Proper exhaustion, in turn, "demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90-91. The exhaustion requirement is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

A prisoner's grievances must be "sufficient under the circumstances to put the prison on notice of the potential claims and to fulfill the basic purposes of the exhaustion requirement." *Irvin v. Zamora,* 161 F. Supp.2d 1125, 1135 (S.D. Cal. 2001). Exhaustion serves several important goals, including "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007) (citing *Woodford*, 548 U.S. at 88–91, *Porter*, 534 U.S. at 524).

"The [PLRA] statute requires the prisoner to use the administrative process that the state provides." *Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005). The Ninth Circuit has held, therefore, that "a prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005); *see also Butler,* 397 F.3d at 1183 (where a prison grievance procedure asks only that an inmate describe the problem and request a remedy, administrative remedies are deemed exhausted as to the claims against all individuals named in the complaint).

The administrative appeal system for inmates in the California prison system is set forth in Title 15 of the California Code of Regulations. "Any inmate or parolee under the [California Department of Correction's] jurisdiction may appeal any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." 15 CA A.D.C. § 3084.1(a)[4]. Under the

---

[4]The California Department of Corrections and Rehabilitation inmate formal administrative appeals process underwent a major revision in 2011, including revising the language in subsection 3084.1(a). The changes to this subsection were not substantive.

regulations in place at the time Plaintiff filed his 602 appeal forms in 2009 and 2010, a prisoner had to proceed through several levels of appeal to exhaust his administrative remedies: (1) informal resolution[5]; (2) formal written appeal on a 602 inmate appeal form at the first level of appeal[6]; (3) second level of appeal to the institution head or designee; and (4) third level appeal to the Director of the California Department of Corrections and Rehabilitation (herein the "Director's level"). Cal. Code Regs. tit. 15, § 3084.5; *Woodford*, 548 U.S. at 85-86; *Wyatt*, 315 F.3d at1119.

Inmates must fill out two parts of the 602 appeal form: part A, asks for a description of the problem, and part B, asks the inmate to articulate the "[a]ction requested." A final decision from the Director's level of review generally satisfies the exhaustion requirement under §1997e(a). *Barry v. Ratelle*, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15,§ 3084.5). The California Code of Regulations further requires that inmates file an appeal within 15 days working days of the event or decision they seek to contest, unless the inmate lacks the opportunity and ability to file within the fifteen day time period.[7] *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010) (citing *Marella v. Terhune*, 568 F.3d 1024, 1028 (9th Cir. 2009); *see also* Cal. Code Regs. tit. 15, § 3084.6) (2010).

The Ninth Circuit does recognize an exception to the PLRA's exhaustion requirement where prison officials improperly screen an inmate's administrative appeals. *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir 2010). "Excusing a failure to exhaust when prison official improperly screen an inmate's administrative appeals helps ensure that prison officials will consider and resolve grievances internally and helps encourage use of administrative proceedings in which a record can be developed that will improve the quality of decision-making in any eventual lawsuit." *Id.* To fall within the exception to the

---

[5] Under California Code of Regulations Title 15, § 3084.5(a)(3), the informal level of appeal was bypassed for appeals of (1) classification committee actions; (2) serious disciplinary infractions; (3) classification staff representative actions; (4) departmental regulations, policies, or operational procedures; (5) exceptional circumstances defined in section 3084.7; (6) any action which the appeals coordinator determines cannot be resolved informally; (7) alleged misconduct by a departmental peace officer; or (8) the denial of disabled inmate or parolee requests for reasonable modification or accommodation filed on CDC Form 1824 (1/95), Reasonable Modification Or Accommodation Request, pursuant to section 3085.

[6] The appeals coordinator could elect to bypass an appeal at the First Formal level and submit it directly to the Second Formal Level for (1) a policy or procedure implemented by the institution head; (2) a policy, procedure or regulation implemented by the department; (3) an issue which cannot be resolved at the division head's level; e.g., appeal of a regular transfer; (4) serious disciplinary infractions. Cal. Code Regs tit. 15, §3084.5(b).

[7] The 2011 revision changed the time limit for filing an appeal to within 30 calendar day of the occurrence of the event or decision being appealed. *See* subsection 3084.8.

PLRA's exhaustion requirement, a prisoner must establish:

> (1) that he [or she] actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he [or she] seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations.

*Id.*

### 2. Application to Plaintiff's Complaint

Plaintiff alleges that Defendants Napolitano and Zamora (hereafter "Defendants") were deliberately indifferent to his safety and failed to protect him as required by the Eighth Amendment. (Doc. No. 1 at 3.) He also alleges that Defendants were negligent when they housed him with an incompatible cell-mate. (*Id.* at 10.) Defendants contend that they are entitled to dismissal of this action because there is no evidence that Plaintiff exhausted his claim that Defendants be held accountable for failing to protect him, or his claim for damages arising from the injuries incurred as a result of the fight with Hernandez in compliance with the prison's grievance system. (Defs.' Memo. Ps&As ISO Mot. to Dismiss; Doc. No. 8-1 at 11.) In support of their motion, Defendants submit evidence that there is no record of any appeals *accepted* for review at either the institutional (Second Level) or Director's level. (*Id.*; Decl. Foston at ¶ 8; Decl. DeGeus at ¶ 6.)

<u>RVR Appeal</u>

The parties' pleadings and exhibits make clear that Plaintiff's first two administrative appeals were screened out because prison regulations require that the disciplinary board first conduct a hearing and issue a final determination before the prison system will consider an inmate appeal challenging a disciplinary decision. Plaintiff's December 3, 2009 602 appeal *only* requested relief from the RVR charges. (Decl. DeGeus, Ex. A; Doc. No. 8-4 at 6.) Plaintiff's appeal did not request that Defendants be held accountable for their wrongdoing or ask Defendants to pay for Plaintiff's damages. (*Id.*) The December 3 appeal was limited to the disciplinary issue and would not have put the prison on notice that Plaintiff was requesting any action other than that the RVR charge be dismissed. This grievance was properly screened out and rejected on December 8, 2010 because an RVR hearing had not taken place. (Decl. DeGeus, Ex. B; Doc. No. 8-4 at 8.)

### RVR Appeal Mentioning Damages

On April 18, 2010—after the March 30, 2010 RVR hearing, but prior to Plaintiff receiving a final copy of the RVR following the Chief Disciplinary Officer's review—Plaintiff submitted another 602 appeal alleging Defendants' negligence resulted in Plaintiff receiving an RVR. (Decl. DeGeus, Ex. C; *Id*. at 10.) Plaintiff requested that the charge for fighting with a weapon be removed from his central file and added a request that Defendants pay for his damages. (*Id*.) Yet, nowhere in the 602 appeal did Plaintiff mention that he incurred physical injuries and or wanted the Defendants investigated. This grievance was screened out on April 30, 2010 because the Appeals Coordinator determined that it was a duplicate of Plaintiff's December 3, 2009 appeal. (Decl. DeGeus, Ex. *D*.; *Id.* at 12.) The rejection letter reiterated that Plaintiff "cannot appeal a disciplinary decision until after the RVR has been heard."[8] (*Id*.) Thus, the 602 appeal regarding removal of the RVR from Plaintiff's file was properly screened out as premature. The disposition on the RVR hearing did not become final until May 28, 2010—nearly a month after the grievance was screened out.

Defendants' motion to dismiss for failure to exhaust administrative remedies argues that Plaintiff's 602 appeal requesting damages on April 18, 2010 was not sufficient to put the prison on notice to process the damages claim as a claim stemming from injuries suffered during the fight with Hernandez. (Defs.' Memo. Ps&As ISO Mot. to Dismiss; Doc. No. 8-1 at11.) Rather, Defendants allege that although the April 18 appeal specifically requests for "them to pay for the damages," when taken in context, Plaintiff's reference to damages referred to damages stemming from receiving an RVR— "such as time in administrative segregation or inability to qualify for a prison job." (Defs.' Memo. Ps&As ISO Mot. to Dismiss; Doc. No. 8-1 at 12.) Defendants further argue that even if the request for damages in the April 18, 2010 appeal should have been interpreted as requesting compensation for physical injuries, the appeal was untimely because nearly five months had passed since the fight occurred. (*Id*.)

### Appeal Requesting an Investigation and Damages

Nevertheless, before the appeals coordinator screened out, rejected and returned Plaintiff's April 18, 2010 appeal, Plaintiff attempted to file another appeal regarding the same subject matter. On April 29, 2010 Plaintiff submitted another 602 appeal alleging Defendants' negligence and this time requested

---

[8]Although this appeal was submitted after the actual RVR hearing, Plaintiff needed to wait to file an appeal asking that the RVR be removed from his file until after the hearing's disposition became final.

a full investigation of the matter, that Defendants be held accountable for their wrongdoing, and that he be reimbursed for the damages incurred. (Decl. DeGeus, Ex. E; Doc. No. 8-4 at 14.) But this time the appeal made no mention of requesting that the RVR be removed from his central file. The Appeals Coordinator properly screened out the April 29, 2010 as untimely and explained that Plaintiff could continue to appeal the matter by submitting an explanation and supporting documentation regarding why the appeal was filed more than 15 working days after the event occurred. (*Id.* at Ex. F.)

The Ninth Circuit has held California prison regulations "explicitly create an exception to the timely filing requirement. If [a prisoner] was unable to file within the fifteen-day filing period, his failure to file timely does not defeat his claim." *Marella*, 568 F.3d at 1027. Nevertheless, [i]f a prisoner had full opportunity and ability to file a grievance timely, but failed to do so, he has not properly exhausted his administrative remedies." *Id*. at 1028 (citing *Woodford*, 548 U.S. at 88).

Plaintiff, however, did not resubmit his appeal with an explanation and documentation to excuse the untimeliness and has not explained to this Court why he was unable to submit such an explanation in accordance with prison procedure. Moreover, there is nothing in the record to indicate that Plaintiff was unable to file an appeal requesting an investigation and reimbursement for damages within the time constraints. In fact, Plaintiff had the opportunity and ability to timely file a grievance as evidenced by his December 3, 2009 602 appeal. When Plaintiff filed the December grievance requesting relief from the pending RVR charges he should have also requested compensation for damages and an investigation into Defendants' conduct. These issues did not depend on the outcome of his disciplinary hearing. Therefore, Plaintiff had the necessary information to file an appeal as well as the opportunity and ability to do so withing the time constraints.

Finally, Plaintiff's May 6, 2010 appeal directly to the Director's level was rejected for failure to exhaust at the first and second levels of appeal. (Doc. No. 1 at 29-30; Decl. Foston, Ex. A; Doc. No. 8-3 at 6.) Plaintiff's May 6, 2010 attempt to request an investigation into Defendants' alleged wrongdoing and to seek damages did not satisfy the exhaustion requirement because a prisoner must complete the administrative review process in accordance with the applicable procedural rules as a precondition to bringing suit in federal court. *Woodford*, 548 U.S. at 84.

///

*3. Plaintiff Failed to Exhaust Administrative Remedies*

Plaintiff never pursued any of his grievances through the final level of review. None of his 602 appeals were decided on the merits because each one was screened out and returned to Plaintiff for being procedurally defective. Plaintiff also did not continue to appeal his request to remove the RVR from his file after the Chief Disciplinary Officer reviewed and affirmed the disposition. Moreover, nothing in any of the rejection letters suggested that no administrative remedies were available for Plaintiff's complaints, rather, Plaintiff chose not to abide by the required procedures and did not follow the instructions provided by the appeals coordinator.

After reviewing the pleadings and exhibits, this Court finds that Defendants have carried their burden to prove that Plaintiff did not satisfy the exhaustion requirements. Moreover, Plaintiff does not qualify for an exception to the exhaustion procedures because prison officials did not improperly screen out his appeals. For the reasons set forth above, the Court concludes that Plaintiff's cause of action is barred by the PLRA and **recommends** that the case be **DISMISSED without prejudice.** However, in light of the Supreme Court's decision in *Woodford v. Ngo*, allowing Plaintiff leave to amend would be futile because it is too late for him to exhaust his administrative remedies.

**B.     Compliance With California Government Claims Act**

Plaintiff alleges Defendants Napolitano and Zamora were negligent in performing their job duties by not following prison protocol to ensure that Plaintiff was housed with a compatible cell-mate. (Doc. No. 1.) Plaintiff further alleges that as a result of their negligence he suffered injuries. (*Id*.)

*1. Legal Standard*

When defendants are public employees, the plaintiff must first submit a claim to the public entity that employs the defendants before filing a lawsuit seeking money damages for violations of California law. Cal. Gov't Code § 945.4, 950.2. The statute requires that, before filing suit, an individual seeking to recover in tort against a public entity for claims relating to injury to a person must present the claim to the entity "not later than six months after the accrual of the cause of action." Cal. Gov't Code § 950.2. Timely claim presentation is not merely a procedural requirement, but is a condition precedent to the claimant's ability to maintain an action against the public entity.

///

*2. Application to Plaintiff's Complaint*

The record shows that Plaintiff failed to file a timely claim in compliance with the California Government Claims Act prior to filing this lawsuit. (Doc. No. 1 at 27.) The claims form Plaintiff attached to his Complaint establishes that Plaintiff failed to comply with the statute because he did not submit the form until June 24, 2010—more than six months after the conduct allegedly constituting a cause of action. Because the Complaint fails to allege facts demonstrating that Plaintiff was excused from complying with the timely claims presentation requirement, the Court recommends that the state tort claims be **DISMISSED without prejudice.**

  **C.**  **Uribe's Motion to Dismiss For Failure to State a Claim**

    *1. Fed.R.Civ.P. 12(b)(6) Standard of Review*

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim" *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A Rule 12(b)(6) dismissal may be based on either a " 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.' " *Johnson v. Riverside Healthcare Sys., LP,* 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. ----, 129 S.Ct. 1937, 1949 (2009)(quoting *Twombly,* 550 U.S. at 556, 570).

While allegations of material fact are accepted as true and construed in the light most favorable to the nonmoving party, *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996), the court need not accept as true generic legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Iqbal*, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 (on motion to dismiss court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

Thus, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then decide whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id*. at 1949. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*; *Twombly,* 550 U.S. at 570 (when a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1949).

*2. Application to Plaintiff's Complaint*

In addition to arguing that Plaintiff's case should be dismissed for failing to exhaust administrative remedies; Defendants argue, in the alternative, that Plaintiff's Eighth Amendment claim does not reach Defendant Uribe because Plaintiff fails to allege any facts relating to the warden. Uribe is merely identified in the caption of the complaint.

Plaintiff's claim against Uribe is based on a theory of supervisory liability. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal,* 129 S.Ct. at 1948. The Ninth Circuit has developed a theory of direct liability based on the supervisor's "training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011). In order to show deliberate indifference, "a plaintiff may state a claim against a supervisor . . . based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Id*. "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id*. at 1207 (internal quotation omitted).

Plaintiff has failed to allege any specific facts regarding Uribe. There are no allegations that Uribe was aware of the actions of Napolitano and Zamora, or that he set in motion a series of acts that would

cause others to inflict constitutional injury. *See Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir.1991). The only place where Uribe is mentioned is in the caption of the Complaint. Therefore, Plaintiff had not provided enough evidence to demonstrate that Uribe could be liable as supervisor under a theory of deliberate indifference. *See Starr*, 652 F.3d at 1208. Accordingly, this Court recommends that Defendant Uribe's motion to dismiss based on failure to state a claim be **GRANTED.** Thus, the Court **recommends** that Uribe be **DISMISSED**. The Court further recommends that Plaintiff be denied leave to amend because any amendment would be futile in light of Plaintiff's failure to exhaust his administrative remedies prior to filing suit.

## VI.     CONCLUSION

Having reviewed the matter, the undersigned Magistrate Judge recommends that Defendants' Motion to Dismiss be **GRANTED** and the Complaint be dismissed.

In addition, this Court recommends that Plaintiff be **DENIED leave to amend** because: (1) amending the complaint would be futile because it is too late for him to exhaust his administrative remedies; and (2) since no federal cause of action remains**,** the Court should also decline jurisdiction over Plaintiff's pendent state claims. 28 U.S.C. § 1367(c).

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to 28 U.S.C. § 636 (b)(1).

IT IS ORDERED that no later than seventeen days after receiving a copy this Report & Recommendation, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties within 10 days of being served with the objections.

DATED: February 7, 2012

Hon. Bernard G. Skomal
U.S. Magistrate Judge
United States District Court